J-S11024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT FRANK BOYER | : | |
| | : | |
| Appellant | : | No. 439 WDA 2021 |

Appeal from the PCRA Order Entered March 17, 2021
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000593-2017

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.: **FILED: MAY 24, 2022**

Appellant, Robert Frank Boyer, appeals from the March 17, 2021 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court summarized the factual and procedural history as follows:

> On June 17[, 2017,] and [June] 19, 2017, the Pennsylvania Office of Attorney General's Bureau of Special Investigation ("BSI") received notifications from the National Center for Missing and Exploited Children that several images of child pornography had been uploaded to [an] email account belonging to [Appellant]. The BSI investigation revealed that the victims depicted in the images ranged from 3 [to] 15 years of age. When [Appellant] was questioned by BSI investigators, [Appellant] admitted that he was familiar with the images and that he attempted to disseminate the images to an unknown email address.
>
> On July 20, 2017, [Appellant] was charged with six counts of [sexual abuse of children - ]dissemination of [photographs, videotapes, computer depictions, and files, twenty] counts of [sexual abuse of children - ]child pornography, and one count of

criminal use of communication facility.[1] Thereafter, [Appellant retained] Megan Will, [Esquire ("Attorney Will")], and [Attorney Will entered her appearance on August 14, 2017.

On February 20, 2018, [Appellant] entered a guilty plea to three counts of [sexual abuse of children - dissemination of photographs, videotapes, computer depictions, and files, ten] counts of [sexual abuse of children - child pornography], and one count of criminal use of [] communication facility. [Appellant] acknowledged in his written colloquy that he understood the trial [court] ultimately holds sole discretion in sentencing and is not bound by any plea agreement [unless] accepted by [the trial] court. [Appellant] stated on the record during his guilty plea hearing that he read, understood, and completed the written colloquy with the help and advice of [Attorney Will].

On August 30, 2018, [the trial] court sentenced [Appellant] to two to four years' incarceration for each count of [sexual abuse of children - dissemination of photographs, videotapes, computer depictions, and files], and one to two years' incarceration for each of four counts of [sexual abuse of children - child pornography], with each sentence to be served consecutively creating an aggregate sentence of 10 to 20 years of incarceration. [The trial] court imposed no further sentence for [the remaining six] counts [of sexual abuse of children - child pornography] and one count of criminal use of [] communication facility[. The trial court] determined that the seriousness of the offenses warranted this lengthy period of incarceration, and noted that [Appellant] was previously afforded probationary treatment and county incarceration as an adult, and, despite that, still committed these offenses.

[Appellant] filed a post-sentence motion on August 31, 2018, wherein [Appellant] argued that [Attorney Will] and the Commonwealth "agreed upon a sentence of 11½ to 23 months of incarceration at the county level with all counts to be served concurrently," and [Appellant] was therefore "entitled to the benefit of his bargain." [The trial] court denied [Appellant's] post-sentence motion on [January 2, 2019.]

---

[1] 18 Pa.C.S.A. §§ 6312(c), 6312(d), and 7512(a), respectively.

Trial Court Memorandum and Order, 3/17/21, at 1-3 (record citations, original footnotes, and extraneous capitalization omitted).

On January 4, 2019, Appellant appealed his August 30, 2018 judgment of sentence. On October 11, 2019, this Court affirmed Appellant's judgment of sentence finding that he waived his challenges to the discretionary aspects of his sentence for failure to include a Pa.R.A.P. 2119(f) statement in his appellate brief.[2] *Commonwealth v. Boyer*, 2019 WL 5095647, at *2 (Pa. Super. Oct. 11, 2019) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court. Therefore, Appellant's judgment of sentence became final on November 12, 2019.[3] *See* 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); *see also* Pa.R.A.P. 903(a)

_____

[2] Alternatively, this Court discerned that Appellant's challenges to the discretionary aspects of his sentence were without merit because Appellant "knew at the time he [pleaded] guilty that there was no agreement as to his sentence." *Boyer*, 2019 WL 5095647, at *2-*3.

[3] We observe that the 30th day upon which to file an appeal in the case *sub judice* fell on Sunday, November 10, 2019, and that Monday, November 11, 2019, was Veterans Day, a federal holiday. Therefore, Appellant's judgment of sentence became final on Tuesday, November 12, 2019. *See* 1 Pa.C.S.A. § 1908 (stating that, whenever the last day of any period of time referred to in a statute "shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation"); *see also* 5 U.S.C.A. § 6103(a) (listing Veterans Day, November 11, as a federal holiday).

(requiring a notice of appeal to be filed within 30 days after entry of an order from which an appeal is taken).

On March 30, 2020, Appellant filed *pro se* a PCRA petition, his first. PCRA counsel was appointed, and counsel subsequently filed an amended PCRA petition on July 24, 2020. The PCRA court conducted an evidentiary hearing on November 5, 2020, and subsequently denied Appellant's petition on March 17, 2021. This appeal followed.[4]

Appellant raises the following issues for our review:

[1.] Whether the [PCRA] court erred in denying [Appellant's] amended [PCRA] petition [when it] determine[ed] that [Appellant] entered his guilty plea "knowingly and intelligently" [and that] upon entry of his plea and prior to sentencing, [Appellant] believed an agreement determined the length of his sentence and not that the [trial] court retained ultimate authority and discretion to issue a sentence?

[2.] Whether the [PCRA] court erred in denying [Appellant's] amended [PCRA] petition [alleging] a claim for ineffective assistance of counsel when trial counsel provided erroneous advice regarding [Appellant's] guilty plea which caused [Appellant] to enter an involuntary [and] unknowing plea?

[3.] Whether the [PCRA] court erred in denying [Appellant's] amended [PCRA] petition [alleging] a claim of ineffective assistance of counsel when trial counsel failed to present the alleged plea agreement to the trial court at the time of [Appellant's] guilty plea hearing which prejudiced [Appellant]?

---

[4] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. In its Rule 1925(a) opinion, the PCRA court stated it was relying on its March 17, 2021 memorandum that accompanied the order denying Appellant's PCRA petition.

[4.] Whether the [PCRA] court erred in denying [Appellant's] amended [PCRA] petition [alleging] a claim for ineffective assistance of counsel when trial counsel failed to file a motion to withdraw [Appellant's] guilty plea following sentencing?

Appellant's Brief at 4 (extraneous capitalization omitted).[5]

With respect to Appellant's first issue – that he did not enter his guilty plea knowingly and intelligently because he believed the length of his sentence had been agreed upon, as part of his guilty plea agreement, and that the trial court did not have the authority to alter the terms of the agreement – we find this issue waived. Pursuant to Section 9543 of the PCRA, a petitioner is eligible for collateral relief if, *inter alia*, "the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). An issue has been waived, for purposes of the PCRA, "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Here, Appellant failed to raise his claim regarding his guilty plea before the trial court, *via* a motion to withdraw his guilty plea or a post-sentence motion, or during direct appeal. As such, Appellant waived this issue, and no Pennsylvania court could address it in the context of collateral review. 42 Pa.C.S.A. §§ 9543(a)(3) and 9544(b).

_____

[5] For ease of reference, we have numbered the pages of Appellant's unpaginated appellate brief.

Appellant's remaining three issues collectively raise a claim of ineffective assistance of trial counsel. Appellant's Brief at 9-13. In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of a PCRA court's dismissal of a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). In order to plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an

objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Barndt***, 74 A.3d 185, 192 (Pa. Super. 2013). "Central to the question of whether [a] defendant's plea was entered voluntarily and knowingly is the fact that the defendant kn[e]w and underst[oo]d the nature of the offenses charged in as plain a fashion as possible." ***Id.*** "[T]o establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Commonwealth v. Pier***, 182 A.2d 476, 479 (Pa. Super. 2018) (citation omitted). Finally, it is well-established that "[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath[,] and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted).

Although a plea agreement occurs within a criminal context, it is contractual in nature and, as such, is analyzed under contract law standards. **Commonwealth v. Martinez**, 147 A.3d 517, 531 (Pa. 2016). "[U]nlike a typical contract, [however,] a plea agreement does not become binding on the parties upon their consent to terms; rather, a plea agreement is not valid and binding until it is evaluated and accepted by a third party, *i.e.*, a trial court." **Id.** (citation omitted); **see also** Pa.R.Crim.P. 590(A)(3) (stating, the trial court "may refuse to accept a plea of guilty or *nolo contendere*, and shall not accept it unless the [trial court] determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered"); **Commonwealth v. Parsons**, 969 A.2d 1259, 1267 (Pa. Super. 2009) (stating, a plea agreement involves an offer agreed to by the parties, acceptance of the offer by the trial court, and performance or enforcement of the plea agreement), *appeal denied*, 982 A.2d 1228 (Pa. 2009). Stated another way, provided that the plea agreement is legally possible to fulfill, once the parties enter the terms of the plea agreement on the record, **see** Pa.R.Crim.P. 590(B)(1), the trial court must still accept the guilty plea, **see** Pa.R.Crim.P. 590(A)(3), for the terms of the agreement to become binding on the parties and the trial court. **Commonwealth v. Root**, 179 A.3d 511, 517 (Pa. Super. 2018).

The continuum of plea agreements ranges from an "open plea agreement," where the parties agree the defendant will plead guilty to certain charges, but there is no agreement as to the Commonwealth's right to seek the maximum sentences applicable to those charges, to a "negotiated plea

agreement," where the parties agree on "not only the charges to be brought, but also the specific penalties to be imposed." *Parsons*, 969 A.2d at 1267 (emphasis omitted) (explaining that, "[i]n between these extremes there are various options, including an agreement to make no recommendation or an agreement to make a favorable but non-binding recommendation" (ellipsis omitted)).

Provided that the parties agree to the terms of the negotiated plea agreement and the trial court accepts the defendant's guilty plea, the trial court **may** sentence the defendant in accordance with the Commonwealth's recommendation, as outlined in the negotiated plea agreement.  In this instance, a defendant is (in most respects) precluded from challenging the discretionary aspects of his sentence, and the sentence may only be altered upon a showing of mistake, misrepresentation, or illegality. *Commonwealth v. Dalberto*, 648 A.2d 16, 19 (Pa. Super. 1994), *appeal denied*, 655 A.2d 983 (Pa. 1995), *cert. denied*, 516 U.S. 818 (1995).  The trial court may, however, disregard the Commonwealth's sentencing recommendation and impose a harsher sentence than the one agreed upon in the negotiated plea agreement. *Commonwealth v. Tann*, 79 A.3d 1130, 1133 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1009 (Pa. 2014).  "Such a sentence is legal, so long as it does not exceed the statutory maximum.  However, a criminal defendant who is sentenced to more than was agreed upon in a negotiated plea may withdraw his guilty plea upon being deprived of the benefit of his bargain." *Tann*, 79 A.3d at 1133 (citation omitted); *see also Root*, 179 A.3d at 518 (emphasizing

that, a defendant is "entitled either to receive the benefit of the bargain, including the agreed-upon sentence, or the option to withdraw his plea").

Here, Appellant asserts in his second issue that trial counsel was ineffective for failure to advise him on the length of sentence the trial court could potentially impose upon his pleading guilty. Appellant's Brief at 9-11. Appellant argues that the validity of his guilty plea was compromised because Attorney Will erroneously advised him on how the law would affect the duration of his sentence. *Id.* at 11.

At his evidentiary hearing, Appellant testified that Attorney Will advised him to plead guilty to the agreed upon charges because "if [he] took [his case] to trial, [he] would face a significant amount of time" in terms of a potential sentence. N.T., 11/5/20, at 15, 27-28. Before pleading guilty, Appellant acknowledged that the maximum sentence he faced upon pleading guilty to the fourteen aforementioned criminal charges was 137 years' incarceration. *Id.* at 23; *see also* Written Guilty Plea Questionnaire, 2/20/18, at 1 (unpaginated). Appellant further understood that the trial court had sole discretion in determining his sentence. Written Guilty Plea Questionnaire, 2/20/18, at ¶40. Attorney Will testified that, "as I tell all of my other defendants, [] the sole discretion on sentencing is up to the [trial court]." N.T., 11/5/20, at 42.

Based upon a review of record, we concur with, and the record supports, the PCRA court's determination that Appellant's claim of ineffective assistance – failure of counsel to advise on length of sentence - was without

- 10 -

merit because Appellant "knew the effect and consequences of his plea" and "understood [the trial court] ultimately held sole discretion in sentencing" him. PCRA Court Opinion, 3/17/21, at 6. Appellant understood that he faced a potential sentence of 137 years' incarceration if he decided to plead guilty to the fourteen criminal charges, as demonstrated by the written guilty plea questionnaire he reviewed with trial counsel, understood, and ultimately executed. Appellant further understood, and Attorney Will advised him, that the trial court retained ultimate discretion in fashioning his sentence regardless of any recommendations by the Commonwealth or trial counsel. Therefore, we find Appellant's ineffectiveness claim based upon trial counsel's failure to advise Appellant on the length of sentence he may receive to be without arguable merit.[6]

Appellant's third issue raises a claim of ineffective assistance of trial counsel for failure to present an alleged plea agreement to the trial court.

---

[6] We find Appellant's reliance on this Court's decision in **Commonwealth v. Hickman**, 799 A.2d 136 (Pa. Super. 2002) in support of his second issue to be misplaced. In **Hickman**, this Court opined that trial counsel provided ineffective assistance when counsel erroneously advised the defendant that "he could be released from prison in two years and be eligible for parole six months later, when, in fact, Appellant was statutorily ineligible for release into the boot camp program and could not receive parole until he [] served four years imprisonment." **Hickman**, 799 A.2d at 141. Unlike the defendant in **Hickman** who was given clearly erroneous advice as to the potential sentence he faced, Appellant in the case *sub judice* did not establish that Attorney Will explained his potential sentence to him incorrectly. Appellant acknowledged that he faced a potential sentence of 137 years' incarceration, and that he understood the trial court retained sole discretion in fashioning his sentence following the entry of his pleading guilty.

Appellant's Brief at 11-12. Appellant contends that "[t]rial [c]ounsel failed to meet with the Commonwealth and the [trial c]ourt together to establish a plea agreement, nor did she attempt to establish the plea agreement at the plea hearing." *Id.* at 11. Appellant asserts that he was prejudiced by Attorney Will's failure to "create a plea agreement on the record at the plea hearing" prior to his pleading guilty "under the belief an agreement was formed for a promised sentence." *Id.* at 12.

The record reveals that, on November 27, 2017, the Commonwealth communicated a plea offer to Appellant. In its plea offer, the Commonwealth agreed to recommend an aggregate sentence of 11½ to 23 months' incarceration to be followed by three years' probation in exchange for Appellant pleading guilty to the aforementioned fourteen criminal charges. N.T., 11/5/20, at Exhibit A. Thereafter, Attorney Will prepared and forwarded to Appellant a letter dated January 5, 2018. In the January 5, 2018 letter, Attorney Will indicated to Appellant that the Commonwealth would not entertain a lesser sentence, and she requested that Appellant advise her whether he wished to plead guilty or proceed to trial. *Id.* at Exhibit B. The January 5, 2018 letter supports the inference that Appellant was dissatisfied with the Commonwealth's offer and, as a result, asked trial counsel to ascertain whether the Commonwealth would consider recommending a lesser sentence. *Id.* at Exhibit B; *see also id.* at 11 (stating, "I [(Appellant)] remember asking [Attorney Will] if there was any possible chance that [the Commonwealth] would go any lower than [the] sentence" recommendation

contained in the November 2017 letter).  Appellant agreed that, ultimately, no plea agreement was reached prior to his pleading guilty.  *Id.* at 26 (agreeing that, while Attorney Will had multiple discussions with the Commonwealth about a plea agreement, ultimately no agreement was reached "even on the issue of what sentence was being recommended to the [trial] court").

At the sentencing hearing, the Commonwealth stated,

Attorney Will and [the Commonwealth] discussed prior to [Appellant entering his guilty] plea of a **potential offer** of 11½ to 23 months[' incarceration.]

N.T., 8/30/18, at 1 (emphasis added).  The Commonwealth went on to recommend that the trial court impose an aggregate sentence of 12 to 24 months' incarceration followed by five years of probation.  *Id.* at 2.  Thus, it may be inferred from the Commonwealth's statement regarding a **potential offer** and its subsequent recommendation, which differed from the terms contained in its November 2017 offer letter, that a plea agreement had not been consummated between the parties.  This inference is further supported by Attorney Will's sentencing recommendation to the trial court which differed from the recommendation made by the Commonwealth in open court.  *Id.* at 12 (stating, "[w]e would ask that [the trial court] consider the 11½ to 23 [months'] incarceration").  Thus, Attorney Will was not obligated to place any statement on the record in open court in the presence of Appellant prior to his pleading guilty because the Commonwealth and Appellant did not reach an

agreement on, *inter alia*, the terms of the recommended sentence. ***See*** Pa.R.Crim.P. 590(B)(1) (requiring, the terms of the plea agreement to be stated on the record in open court in the presence of the defendant **when counsel for both sides has arrived at a plea agreement**).

While the resolution of criminal charges *via-a-vis* a plea agreement is strongly favored in Pennsylvania jurisprudence, parties are not required to participate in such plea discussions. ***Commonwealth v. McElroy***, 665 A.2d 813, 816 (Pa. Super. 1995) (stating, "[t]he Commonwealth is never under any legal obligation to plea bargain with any defendant[, and] a defendant has no constitutional right to a plea bargain arrangement"), *appeal denied*, 674 A.2d 1073 (Pa. 1996). Here, Attorney Will solicited and received a plea offer from the Commonwealth. Rather than accepting the offer, Appellant requested that Attorney Will inquire as to whether the Commonwealth would consider a lesser sentence. The Commonwealth responded that it would not recommend a lesser sentence. Attorney Will was under no obligation, as Appellant contends, to engage in further efforts to negotiate a plea agreement because the Commonwealth had proposed its "best offer" and Appellant rejected that offer in the hopes of a better offer.[7] Consequently, Appellant's third issue is without arguable merit.

_____

[7] Moreover, Appellant failed to demonstrate how the alleged failure to place the trial court on notice of the potential offer by the Commonwealth, which Appellant had already rejected, prejudiced Appellant. Even if the trial court were aware of the potential offer and the Commonwealth's

In his final issue, Appellant asserts that trial counsel was ineffective for failing to file a motion to withdraw his guilty plea after the trial court imposed an aggregate sentence of 10 to 20 years' incarceration. Appellant's Brief at 12-13.

It is well-established that "a disappointed expectation regarding a sentence does not constitute grounds for withdrawing a guilty plea." **Commonwealth v. McClendon**, 589 A.2d 706, 708 (Pa. Super. 1991) (*en banc*), *appeal denied*, 597 A.2d 1151 (Pa. 1991).

> [T]o permit the withdrawal of a guilty plea after sentence has been entered, there must be a showing of prejudice that results in a manifest injustice to the defendant. To prove manifest injustice, a criminal defendant must show that his plea was involuntary or was entered without knowledge of the charge. However, once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him.

**McClendon**, 589 A.2d at 707 (citations, quotation marks, and original brackets omitted). To ensure that a guilty plea is voluntary, knowing, and intelligent, the official comment to Pennsylvania Rule of Criminal Procedure 590 states that, prior to accepting a guilty plea,

---

then-recommended aggregate sentence of 11½ to 23 months' incarceration to be followed by three months' probation contained in the November 2017 letter, the trial court was not obligated to accept this offer or to sentence Appellant in accordance with the terms of the potential offer. Rather, Appellant understood that the trial court retained sole discretion to fashion its own sentence.

[a]t a minimum the [trial court] should ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the [trial court] is not bound by the terms of any plea agreement tendered unless the [trial court] accepts such agreement?

(7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilt if the defendant pleads guilty to murder generally?

Pa.R.Crim.P. 590 at Comment. The oral colloquy of a defendant may be supplemented by a written colloquy that is read, completed, and signed by the defendant and incorporated into the record as part of the plea proceedings. ***Commonwealth v. Bedell***, 954 A.2d 1209, 1212-1213 (Pa. Super. 2008), *appeal denied*, 964 A.2d 893 (Pa. 2009). These procedures governing the guilty plea colloquy ensure that, prior to pleading guilty, the defendant understands what the plea connotes, *i.e.*, potential sentence, and what the consequences are of pleading guilty, *i.e.*, forgoing the right to a trial-by-jury. ***Bedell***, 954 A.2d at 1212.

Upon a review of the record, we concur with, and the record supports, the PCRA court's determination that Appellant failed to demonstrate that trial

- 16 -

counsel's decision to forgo the filing of a motion to withdraw his guilty plea lacked any objectively reasonable basis designed to effectuate Appellant's interest. PCRA Court Opinion, 3/17/21, at 10. At Appellant's evidentiary hearing, Attorney Will stated that, after sentencing, she discussed Appellant's options with him and explained that, in her opinion, filing a motion to withdraw the guilty plea would be fruitless and that the better procedure was to file a motion seeking reconsideration of Appellant's sentence. N.T., 11/5/20, at 37. Attorney Will felt that filing a motion to withdraw the guilty plea was fruitless because "the law was [not] on our side" and it would be difficult to overcome the burden of demonstrating a manifest injustice. *Id.* at 46. We agree.

The record demonstrates that, prior to the trial court accepting Appellant's guilty plea, the following exchange occurred:

| | |
|---|---|
| Trial Court: | I have in front of me your written guilty plea questionnaire; and at the bottom of each page, there appears to be your signature. Is that in fact your signature? |
| Appellant: | Yes, sir. |
| Trial Court: | Before you signed at the bottom of each page, did you read and answer each question on each page? |
| Appellant: | Yes, Your Honor. |
| Trial Court: | And as you were going through this process, did you have Attorney Will with you to help you answer the questionnaire? |
| Appellant: | I did, Your Honor. |
| Trial Court: | Did she answer all the questions you had for her? |

- 17 -

Appellant:         Yes, sir.

Trial Court:        And do you have any questions now concerning the contents of your guilty plea questionnaire?

Appellant:         No, sir.

Trial Court:        Now, Attorney Will represents you. Have you had enough time to meet with her and consult with her concerning your case?

Appellant:         Yes, sir.

Trial Court:        Are you satisfied with her services as your attorney so far?

Appellant:         Yes, sir.

Trial Court:        Now, a moment ago, the [attorney for the Commonwealth] described the basic facts of this case. Did you hear him describe those facts?

Appellant:         I did.

Trial Court:        And do you have any questions about the facts?

Appellant:         No, Your Honor.

Trial Court:        And the basic allegation here is that you came into possession of child pornography images and then you made them available for other people to view by putting them in some sort of Cloud storage site and giving access to that [site] to other people. That is the allegation. Do you have any questions about that?

Appellant:         No, Your Honor.

Trial Court:        Does that accurately describe what you did?

Appellant:         Yes, sir.

Trial Court:        And are you therefore pleading guilty to these offenses because you're truly guilty?

Appellant:         I am.

Trial Court:        Are you pleading guilty voluntarily and of your own free will?

| Appellant: | Yes sir. |
| Trial Court: | And are you asking me to accept your plea of guilty? |
| Appellant: | Correct. |

N.T., 2/20/18, at 10-12. Thereafter, the trial court accepted Appellant's guilty plea. The written guilty plea questionnaire, which was incorporated into the record during the plea hearing, listed the charges to which Appellant was pleading guilty and stated, *inter alia*, that the maximum sentence Appellant could receive was 137 years' incarceration. The questionnaire further explained, and Appellant understood, that he was giving up his right to a trial-by-jury, that, *inter alia*, he was presumed innocent until found guilty, and that the trial court retained sole discretion to determine Appellant's ultimate sentence. Written Guilty Plea Questionnaire, 2/20/18, at ¶¶11-25, 40.

Based upon a review of the record, Appellant entered his guilty plea knowingly, voluntarily, and intelligently. Appellant's dissatisfaction with his ultimate sentence is not grounds to permit the withdrawal of his guilty plea. Therefore, Attorney Will's decision to forgo filing a motion to withdraw Appellant's guilty plea, in which the burden would have been on Appellant to demonstrate a manifest injustice, does not constitute ineffective assistance of counsel. Appellant is unable to demonstrate that a motion to withdraw his guilty plea possessed arguable merit, that trial counsel's decision to forgo such a filing lacked an objectively reasonable basis, or that he suffered prejudice

due to counsel's conduct. Consequently, Appellant's ineffectiveness claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2022